Mr. Chief Justice Sharkey
delivered the opinion of the court.
Phillips, the appellee, filed his bill to quiet title to a lot in the town of Jackson to which he claims title as derived originally from the state, under a provision in the act of 30th June, 1822, providing for the location of the seat of government, and subsequent enactments. To the bill there was a demurrer on the ground that he had shown no title either in himself or those under whom 'he ^claimed, and it becomes necessary, therefore, to examine into the origin and merits of the title as set up.
From the provisions of the act, the object which the state had in view is plain. A permanent seat of government had been selected at a place which was then a wilderness, and the legislature -was desirous that it should be settled and improved. The selection had been made by commissioners who had been appointed for the purpose, and who were continued in office for the purpose of laying off the town, and carrying into effect the objects and views of the state. By the sixth section of the act referred to, those commissioners were required to designate the lots which .should be subject to a right of preference, as thereinafter provided. By the eighth section of the act the superintendant of public buildings was empowered to grant a right of preference to ten lots in the town to such responsible persons as he might think proper, on conditions that the occupants (by which, I presume, is meant the grantees) should, by the first Monday in November thereafter, build a log house of a certain description, and enter into an obligation in writing to pay to the treasurer of the state, *286 within two years from the date of the certificate of preemption, so much money as would be equal to an average of the lots sold in the same square,' The state was the owner of the soil and she has pointed out the terms on which she would part with her right to a portion of it. ■ That portion, however, was not only limited in extent, but the particular lots were to be designated by the commissioners. The designation by the commissioners was therefore the first step necessary in order to enable any one to acquire title. The state did not open the door to settlers generally, by authorising them to make their own selection of the lots they would choose to occupy. It was entrusted to the commissioners to protect the interests of the state by selecting the particular lots which should be subject to the right of preemption or preference. After they had made the designation the superintendant of public buildings (who was a different officer) was authorised to grant to such responsible persons as he might think proper, on the conditions mentioned; but certainly he was not authorised to grant any other lots than those which had been designated.
The sixth section, which gives the power to designate, was evidently drawn with a view to the subsequent provision. The language is, “that the said commissioners shall designate the lot on which the said temporary buildings shall be erected, and shall also designate the lots on which a right of preference shall issue as hereinafter directed;” and the eighth section made the provision complete by directing how and b3f whom the rights of preference were to be issued, and also to what extent.
The complainant claims title to Lot No. 1, in Square 1, through Abram Defiance, who was the superintendant of public buildings, on the ground that Defiance was entitled to a light of preference by having erected the necessary buildings and obtained his certificate of right; and yet there is no allegation in the bill that the lot in question was designated by the commissioners. In the absence of such an obligation the bill must be regarded as showing no right in the complainant. The state determined to part with a certain portion of her lots, and only a certain portion in that particular way; and for aught that appears she has done so independently of the one claimed. None of the subsequent acts of *287 the legislature help out this defect. The time of payment was extended by two different acts; but they do not in the slightest degree give sanction to any rights irregularly acquired, and can only be understood as referring to those persons who claimed regularly under the first provision, or by special act of the legislature in which they were named.
It becomes unnecessary to notice the other points made, since if complainant had in all other respects complied with the provisions of the several statutes, he could have acquired no right, not having shown the necessary foundation for a title.
The decree of the chancellor must be reversed and bill dismissed.